## PROPERTY INTERESTS IN DIVORCE ACTIONS.

[Common Pleas Court of Summit County.]

LYDIA G. HAMILTON v. MINNIE RUDY.

Decided, October 5, 1906.

*Divorce and Alimony—Action for Lis Pendens, When—Conveyance of Property by the Husband before Service of Summons but with Knowledge of the Filing of the Suit—Title—Fraud—Constructive Notice—Grantee in a Fraudulent Conveyance will be Protected to the Extent of Money Actually Paid, When.*

Where a wife brought suit for divorce and alimony against her husband, describing a house and lot, occupied by her and owned in common by her and her husband, and asking that the same be set off to her as alimony, and caused proper process to issue in said suit, which was returned "not found," and the husband within a short time after the issuing of said process and just before second process was issued, but having knowledge that his wife had brought suit against him for divorce, conveyed his interest in said property to a woman with whom he was boarding, for an inadequate consideration, under circumstances which warrant the court in finding said conveyance to be fraudulent, and very soon after said transfer, proper service was made upon the husband, and the wife was granted a divorce and granted said property as alimony—*Held:* That said case was "pending" so that upon decree setting aside

said transfer, the decree in the divorce suit transferring the property to the wife, operated to convey title to the wife as against the husband and his grantee and a subsequent purchaser who acquired title with constructive notice and without value.

WASHBURN, J.

There are certain facts in this case that are not disputed, which are as follows:

For a long time previous to September, 1901, Andrew Rudy and Minnie Rudy were husband and wife, and resided with their children on premises in Barberton, Summit county, Ohio, which they owned in common, each owning one-half thereof. Andrew Rudy owned no other property.

In September, 1901, Andrew Rudy deserted his wife and family and went to Dayton, Montgomery county, Ohio, and began boarding with Adalena Miller, whom he afterwards married.

On September 18, 1902, Minnie Rudy sued Andrew Rudy for divorce and alimony in Summit county, and although two attempts to get service upon Andrew Rudy by issuing process to the Sheriff of Montgomery County were made, no service was obtained until March of 1904.

In the meantime Andrew Rudy had brought suit for divorce in Montgomery county, and later dismissed his suit.

On February 1, 1904, Minnie Rudy filed an amended petition for divorce in which she described her husband's half interest in said premises, and asked that the same be given to her as alimony. Summons on the amended petition was issued to the Sheriff of Montgomery County on February 1, 1904, and returned "not found."

On February 24, 1904, Andrew Rudy deeded his said one-half interest in said premises to Adalena Miller, the consideration therefor, as testified to by Andrew Rudy and Adalena Miller, being $200 cash and an account of about $100 which Adalena Miller held against Andrew Rudy, and said deed was recorded in Summit county on February 26, 1904. The whole property was worth $2,500 at the time of said sale of a half interest of it.

On February 29, 1904, another summons was issued on the amended petition, and the same was regularly and properly served on Andrew Rudy on March 2, 1904.

On May 21, 1904, Minnie Rudy was granted a divorce from Andrew Rudy and was also granted his one-half of said premises as alimony, and he was ordered to convey same to her within five days, and on his failure to so convey it was ordered that said decree should operate as a conveyance. Then said decree contained the following provision:

"It is further ordered, adjudged and decreed that in the event said defendant has conveyed his interest in said real estate above described, so as to defeat the order, decree or judgment, awarding the interest of said defendant in said premises to the plaintiff as her alimony, the plaintiff is hereby allowed and decreed as reasonable alimony the sum of $1,000, which is to be paid in monthly installments of $25 on the first Saturday of each and every month until said sum is paid, or until the further order of the court."

During all this time and up to the present time Minnie Rudy with her children has occupied the whole of said premises and has improved the same and exercised ownership over the same.

On September 10, 1904, Andrew Rudy married Adalena Miller. On September 2, 1905, Andrew Rudy and Adalena Miller Rudy conveyed said half of said premises to the plaintiff in this suit, Lydia G. Hamilton.

As I have said, the foregoing facts are not disputed.

October 19, 1905, this suit was begun by plaintiff to partition said premises. The defendant, Minnie Rudy, answered, claiming said premises under her decree, charging that these transfers were made with full knowledge and without consideration, for the purpose of cheating and defrauding her, and asking that the deeds be declared void and her title quieted. Plaintiff replied, denying charges of fraud.

As to the disputed facts, I find that at the time of the conveyance by Andrew Rudy to Adalena Miller they both knew that Minnie Rudy had brought suit for divorce against Andrew Rudy in Summit county, although no summons had then been actually served on Andrew Rudy; and further that Adalena Miller knew that Andrew Rudy had no other property, and that his wife was in the possession and actual occupancy of said premises.

At the time of the conveyance by Andrew Rudy and Adalena Miller Rudy to plaintiff, said decree of divorce giving said prop-

erty to the defendant, Minnie Rudy, was a matter of public record in Summit county, where the land was situated, and I find that plaintiff was informed that said Andrew Rudy had been divorced from defendant; that defendant was living in and occupying said premises, and that said Andrew Rudy and his then wife did not know what interest they had in said property; that plaintiff made no investigation as to said property, but traded property therefor which was of no value, and which said Andrew Rudy and Adalena Rudy had not seen and knew nothing about.

Being convinced that the evidence establishes all of the foregoing facts, what decree should a court of equity make?

While technically speaking the wife's right upon divorce being granted to have alimony out of the husband's estate may not make her a creditor, still in one sense she is a creditor. In 31 O. S., page 1, Judge Boynton in delivering the opinion of the court, said:

"The claim for alimony rests on the common law obligation of the husband to support the wife in a manner suitable to his condition and station in life during the existence of the marriage relation. And this obligation is as binding after the commission by the husband of a marital offense entitling the wife to a divorce, as before. In respect to such obligation she may well be held to be a creditor of the husband."

This language is quoted with approval in 50 O. S., at page 481. Indeed there are a number of cases in Ohio in which the wife's claim to alimony is especially favored in a court of equity. 12 C. D., 526; 10 C. D., 321; 63 O. S., 220; Wright, page 492.

From the evidence in this case it appears to the court that Andrew Rudy and Adalena Miller knew that the defendant had sued Andrew Rudy for divorce, and knew he had no other property, and knowing that the chances were very favorable for the defendant securing Andrew Rudy's half of this property as alimony in said suit, for the purpose of defeating the defendant in her effort to obtain said property as alimony, executed and delivered the deed in question from Andrew Rudy to Adalena Miller, and all things being considered the circumstances warrant the court in saying that that was a fraudulent conveyance, and as against the defendant is void.

There can be no doubt that Andrew Rudy intended to pre-vent defendant's securing alimony, and considering the price paid by Adalena Miller and her knowledge that defendant was the wife of Andrew Rudy and was in the possession of said property, and had sued him for divorce, Adalena Miller can not be considered an innocent purchaser; indeed, under the circumstances, it is reasonable to conclude that she sympathized with Andrew Rudy, and was willing to assist him in his efforts to prevent defendant securing said property as alimony.

But it is said by counsel for plaintiff that the defendant can not prevail, because the divorce suit was not *lis pendens* at the time Andrew Rudy conveyed to Adalena Miller, and the case not being *lis pendens*, *no* valid decree could have been made transferring the property to the defendant without making Adalena Miller a party to the suit, which was not done.

It is true that under our statute, Section 5052, which is declaratory of the common law, an action is not "pending so as to charge third persons with notice of its pendency" until "summons has been served or publication made," that is, the mere filing of the petition and service of summons will "charge" innocent third parties with notice, although they have no actual notice, still, where the third parties have actual notice of the filing of the petition, and instead of being innocent third parties, are attempting to perpetrate a fraud upon the party filing the petition, then that suit as to them is "pending," so as to prevent said third parties from retaining the fruits of their fraud as against the party filing the petition.

While this is not technical *lis pendens* because the court at the time of the transfer had not acquired jurisdiction over the person of the defendant or of the subject-matter of the suit, yet, when a transfer of the property made after the petition was filed has been set aside by a court of equity because of fraud, the divorce case should be held to have been so "pending" as to render the decree of the court in the divorce case transferring the property, operative as against the defendant who is later regularly served and those who participated with him in the fraud, and their grantees who acquire title with at least constructive notice and not for value.

The plaintiff in this case who purchased the property after the marriage of Andrew Rudy and Adalena Miller is in no

better position than Adalena Miller; indeed, it seems that she is in a worse position in a court of equity; because at the time she purchased and for a year previous to that time there was a judgment of the court of common pleas in the county where this land was situated, conveying this property to the defendant as alimony, and the defendant was still in the possession of all of the property and was exercising ownership over the same, and in addition thereto Andrew Rudy and his then wife at the time they sold to the plaintiff, told the plaintiff that they did not know what interest they owned in the property; that there had been a suit for divorce and the extent of their interest was unknown to them, and besides, the plaintiff in fact paid no consideration for said premises.

The facts as known by the plaintiff when she purchased, together with the records of Summit county of which she had constructive notice, were suggestive of the fraudulent character of the transfer to Adalena Miller, and rendered competent the testimony showing that plaintiff really paid nothing for the property.

Without further discussing the matter it seems to me that the equity of this case is upon the side of the defendant, and a decree may be taken dismissing the plaintiff's petition, and granting the prayer of the defendant's cross-petition, setting aside the conveyance from Andrew Rudy to Adalena Miller and from Andrew Rudy and Adalena Miller Rudy to the plaintiff, and quieting the title of the defendant to the whole of said premises.

There are cases where conveyances are set aside on the ground of fraud in which the grantee is protected to the extent of the money actually paid; but this is not a case which calls upon the court to protect the plaintiff to the extent of Adalena Miller's actual payment to Andrew Rudy, for the reason that the plaintiff did not pay that money, and the plaintiff took the property with full knowledge, in law, and paid nothing therefor, and it would not be equitable to require the defendant to pay the plaintiff the money Adalena Miller paid to Andrew Rudy.

Notice of appeal may be entered for the plaintiff and bond therefor fixed at $150.

*Tibbals & Frank*, for plaintiff.

*Kohler & Mottinger*, for defendant.